UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANGELA FLICK,

                    Plaintiff,

-against-

AMERICAN FINANCIAL RESOURCES,
INC.,

                    Defendant.
-----------------------------------------------------X

MEMORANDUM AND ORDER

CV 10-3084

(Wexler, J.)

        Tongring Law Offices
        BY: SUZANNE TONGRING, ESQ.
        244 Madison Avenue No 3740
        New York, NY 10016
        Attorneys for Plaintiff

        Touhy, Touhy, Buehler & Williams LLP
        BY: TERRENCE BUEHLER, ESQ.
        55 West Wacker Drive Suite 1400
        Chicago, IL 60601
        Attorneys for Plaintiff

        The McHattie Law Firm
        BY: CHRISTOPHER MCHATTIE, ESQ.
        550 West Main Street
        Boonton, NJ 07005
        Attorneys for Defendant American Financial Resources, Inc. LLC

        BERMAN SAUTER RECORD and JARDIM
        BY: THOMAS CHRISTOPHER JARDIM, ESQ.
        222 Ridgedale Avenue
        POB 2249
        Morristown, New Jersey 07962
        Attorneys for Defendant Dubnoff

WEXLER, District Judge

        This is a case that alleged, prior to motion practice, claims pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 (the "FLSA"), the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001, ("ERISA"), and the laws of the States of New York and New Jersey. Plaintiff is Angela Flick ("Plaintiff"), a former employee of Defendant American Financial Resources, Inc. ("AFR" or "Defendant"). All ERISA claims have been dismissed, which resulted in dismissal of all named Defendants except for AFR. Although Plaintiff commenced this action as a class and/or collective action being pursued on behalf of herself as well as those similarly situated, no class or collective action was ever certified and the action is proceeding as an individual claim only.[1]

As of this date, Plaintiff's sole remaining federal claim is for wages alleged to be due pursuant to the FLSA and retaliation for engaging in acts protected by that statute. Plaintiff also pursues parallel state law claims. Discovery is now closed and before the court is Defendant's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.[2]

## BACKGROUND

I.  Brief Factual Background and Prior Proceedings

Plaintiff is a resident of the State of New York, who was employed by AFR as a loan officer pursuant to a written employment agreement. While the employment agreement specifies

---

[1] See Docket Entry (hereinafter "DE") 3 (minute order of Magistrate Judge Tomlinson dated October 5, 2010, noting Plaintiff's failure to show that she is similarly situated to other prospective plaintiffs); see also DE 54 (January 2011) ordering that motion for class certification await a decision on motion to dismiss amended complaint, and DE 108 ruling on that motion. After dismissal of all ERISA claims, Plaintiff never pursued further any effort to certify this matter as a collective action.

[2] Defendant styles this motion as both a Rule 56 motion for summary judgment and a Rule 12 motion to dismiss. The court has considered matters outside of the pleadings, of which both parties have notice and upon which both have relied. This motion is therefore considered pursuant to Rule 56.

Denville, New Jersey as the office to which Plaintiff was assigned, Plaintiff was free to work from her home. Plaintiff was employed from March 24, 2009 until September 2, 2009 – a period of less than six months. During that time period Plaintiff closed a total of three loans.

On September 11, 2009, after she was terminated, but before this action was filed, Plaintiff commenced a claim for wages due before the New Jersey Department of Labor and Workforce Development, Division of Wage and Hour Compliance. That complaint, although not ultimately pursued by Plaintiff, sought only unpaid commission payments of $1,992.36.

This action was commenced in July of 2010. On November 12, 2010, AFR made an offer of judgment, pursuant to Rule 68 of the Federal Rules of Civil Procedure, in the amount of $5,000 (the "2010 Rule 68 Offer"). The Rule 68 Offer additionally offered costs and reasonable attorneys fees, if applicable, in an amount to be determined by the court. Plaintiff objected to the form of AFR's offer and it was rejected. Because the 2010 Rule 68 Offer inadvertently stated a ten day period for acceptance, instead of the statutory fourteen day period, Magistrate Judge Tomlinson declared that offer void.

On April 11, 2011, AFR served a second Rule 68 offer of judgement (the "2011 Rule 68 Offer"). With the exception of correcting the time period in which to respond, the 2011 Rule 68 Offer was identical to the November 2010 Rule 68 Offer. Plaintiff contended that the 2011 Rule 68 Offer was somehow defective in that it was vague and invalid because it provided for the court to determine any fee award. In response to Plaintiff's claim that the 2011 Rule 68 Offer was defective, AFR moved to have the validity of its offer confirmed. In an opinion dated January 3, 2012, Magistrate Judge Tomlinson confirmed the validity of the 2011 Rule 68 Offer. Flick v. American Financial Resources, Inc., 2012 WL 181639 (E.D.N.Y. 2012). This court denied

Plaintiff's appeal of that decision.

II.  Claims Remaining and the Motion for Summary Judgment

The claims remaining allege FLSA minimum wage violations and retaliation, as well as parallel state law claims. Plaintiff makes no claim for overtime compensation. In addition to seeking wages allegedly due, Plaintiff seeks reinstatement to her prior position at AFR and, upon such reinstatement, back and front pay. Plaintiff's claim for reinstatement appears to be the relief sought in connection with her claims of retaliation.

Now that the extensive and contentiously litigated two year period of discovery in this case is complete, AFR seeks summary judgment as to all remaining claims. AFR argues that it is entitled to summary judgment as to Plaintiff's wage claim on the grounds that it is clear that Plaintiff's wages never fell below the minimum hourly federal wage, and that she was paid commissions as promised. Summary judgment as to Plaintiff's claims of retaliation is sought on the ground that there is no evidence that Plaintiff engaged in any activity protected by the anti-retaliation provision of the FLSA and that she similarly fails to state a claim under either New York or New Jersey State law.  In opposition to the motion, Plaintiff continues, for the most part, to argue matters regarding discovery and prior rulings of this court. Additionally, Plaintiff submits a statement of facts, interspersed with legal argument, in support of her argument that factual disputes preclude summary judgment.

## DISCUSSION

I.  Standards on Motion for Summary Judgment

The standards for summary judgment are well settled.  Rule 56© of the Federal Rules of Civil Procedure 56, states that summary judgment is appropriate only if "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 5©; Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010). Affidavits submitted in opposition to summary judgment must be based on personal knowledge,"set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir.2004).

The moving party bears the burden of showing entitlement to summary judgment. See Huminski v. Corsones, 396 F.3d 53, 69 (2d Cir. 2005). In the context of a Rule 56 motion, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts .... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.' " Caldarola v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002), quoting, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original). As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). "[T]he mere existence of some alleged factual dispute between the parties"

alone will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). The nonmoving party may not rest upon mere conclusory allegations or denials but must set forth " 'concrete particulars' " showing that a trial is needed. R.G. Group, Inc. v. Horn & Hardart Co., 751 F.2d 69, 77 (2d Cir. 1984), quoting, SEC v. Research Automation Corp., 585 F.2d 31, 33 (2d Cir.1978). Accordingly, it is insufficient for a party opposing summary judgment " 'merely to assert a conclusion without supplying supporting arguments or facts.' " BellSouth Telecomms., Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996), quoting, Research Automation Corp., 585 F.2d at 33.

II. The FLSA

The FLSA provides employees a private right of action to recover minimum wages for hours worked. 29 U.S.C. §216(b). The term "work," refers to "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business." Reich v. Southern New England Telecommunications Corp., 121 F.3d 58, 64 (2d Cir. 1997). Where, as here, an employee is paid on a commission basis, that employee must nonetheless be paid the minimum wage for hours worked. Excess commissions earned in a given time period may be carried forward and applied to the minimum wage for the next time period so long as the employee is paid the minimum wage for each hour worked. Chao v. Vidtape, Inc., 2003 WL 21243085 *3 (2d Cir.2003), see also Biggs v. Wilson, 1 F.3d 1537, 1542 (9th Cir. 1993).

An employee who brings an action for unpaid wages bears the burden of proving that he has not been properly compensated. Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003). The way in which that burden is met is informed by the FLSA's record keeping

6

requirement. Specifically, the statute imposes the duty upon employers to keep records of "persons employed" and the "wages, hours, and other conditions and practices of employment . . . ." 29 U.S.C. §211©. Where the employer fails to keep such records, the court applies a burden shifting analysis to determine hours worked. In the first instance, an employee proves that work has been performed by producing evidence of the amount and extent of hours worked, by "just and reasonable inference." Chao v. Vidtape, Inc., 196 F. Supp.2d 281, 293 (E.D.N.Y. 2002), aff'd mem., Chao v. Vidtape, Inc., 2003 WL 21243085 *3 (2d Cir.2003), quoting, Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687–88 (1946). The burden then shifts to the employer "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." Id. In the event that the employer fails to sustain this burden, the court may award damages to the employee, even if those damages are "only an approximation." Id.

In addition to requiring the payment of proper wages, the FLSA contains an anti-retaliation provision. Specifically, the statute prohibits discrimination against any employee who has, inter alia, "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding . . . ." 29 U.S.C. §215(a)(3). The term "filed any complaint" has been interpreted to include oral as well as written complaints. Kasten v. Saint-Gobain Performance Plastics Corp., 131 S. Ct. 1325, 1329 (2011).

Despite the Supreme Court's broad interpretation of the term "filed" to include oral complaints, the Kasten Court made no ruling as to whether informal complaints made to an employer are protected under the FLSA. That court has therefore left intact the law in this circuit

7

that complaints made to employers (oral or written), as opposed to governmental agencies, do not qualify as protected activity within the meaning of the FLSA. See Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993) (FLSA protects only those who file complaints or institute proceedings); accord Duarte v. Tri-State Physical Medicine & Rehabilitation, P.C., 2012 WL 2847741 *3 (S.D.N.Y. 2012); Hyunmi Son v. Reina Bijoux, Inc., 823 F. Supp.2d 238, 243 (S.D.N.Y. 2011). Moreover, the Supreme Court has adhered to the law that a retaliation complaint alleged to fall within the scope of the statute "must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." Kasten, 131 S. Ct. at 1335.

III. State Anti-Retaliation and Whistleblowing Statutes Alleged to Have Been Violated

A. New York Law

Like the FLSA, New York law prohibits retaliation against employees who make certain employment-related complaints. Thus, Section 215 of the New York Labor Law prohibits retaliation against any employee who "has made a complaint to his or her employer, or to . . . any other person, that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of" the New York Labor Law. N.Y. Labor L. §215(1)(a). An employee making such a complaint need not cite a specific chapter or provision that is being violated, but must make a complaint of activity that he reasonably believes constitutes a violation of the Labor Law. Id. New York's Labor Law explicitly covers complaints made to an employer, and therefore offers broader coverage that then FLSA. Nonetheless, the employee must have stated a complaint, albeit without citing chapter and verse, about conduct that violates the Labor Law.

B      <u>New Jersey Law</u>

Plaintiff alleges that AFR violated the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. §34:19-3 ("CEPA") because she was fired in retaliation for reporting illegal or unethical workplace activity. CEPA was passed to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct." <u>Dzwonar v. McDevitt</u>, 177 N.J. 451, 461 (N.J. 2003); <u>see also</u> <u>Barratt v. Cushman & Wakefield of New Jersey, Inc.</u>, 144 N.J. 120, 127 (N.J. 1996)(purpose of CEPA is "to protect employees who report illegal or unethical work-place activities"). To state a claim under CEPA, a plaintiff must show as a threshold matter, a reasonable belief that "his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy." <u>Dzwonar</u>, 177 N.J. at 462. While the employer need not be shown to have actually violated any such law or policy, the trial court must "first find and enunciate the specific terms of a statute or regulation, or the clear expression of public policy, which would be violated if the facts as alleged are true." <u>Id</u>. (citation omitted).

IV.    <u>The Parties' Submissions: Facts Agreed and In Dispute</u>

In support of its motion, AFR submits a memorandum of law and a statement of facts pursuant to Rule 56.1 of the rules of this court. AFR annexes thereto supportive discovery responses, portions of Plaintiff's deposition testimony, the employment agreement, and copies of email correspondence produced during discovery. The documents that Plaintiff submits in opposition to AFR's motion are her opposing Rule 56.1 statement ("Plaintiff's Statement"), documents annexed thereto, and a two page memorandum of law.

As described above, there is no dispute that Plaintiff makes no claim for overtime

9

compensation. There is similarly no dispute as to the dates of Plaintiff's employment and the total amount paid to Plaintiff by AFT. It is thus agreed and clear that Plaintiff was employed by AFR from March 24, 2009 until September 2, 2009, and that she was paid a total of $3350.00. Plaintiff disputes that this was either the proper minimum wage, or an amount reflecting the proper commissions due.

The employment agreement (the "Agreement") is before the court. Plaintiff takes issue with the copy of the employment agreement submitted by AFR on the ground that it is illegible. The court has no problem reading the Agreement, including the attachments thereto which describe the nature of Plaintiff's commission-based compensation. As to wages, the Agreement provides that Plaintiff was to receive "W-2 employee compensation from [AFR] on an hourly wage." The amount of that wage is unspecified. The Agreement further provides that overtime is to be paid "on all time over 40 hours worked in one week or commission whichever is greater . . . ." As to work performed away from the New Jersey office, the Agreement provides for the employee to "keep his time worked accurately and honestly and report it to the Branch Manager as soon as reasonable." Despite the fact that Plaintiff worked primarily from her home, and not from AFR's New Jersey office, it is undisputed that Plaintiff did not submit contemporaneous reports of hours worked to AFR. There is, however, evidence of hours worked that is presently before the court.

Plaintiff has produced pages from her calendar/planner for the months of her employment (the "Calendar"). Plaintiff's Third Amended Rule 26(a) disclosures identify the Calendar as a "list of hours from Plaintiff's time records she kept on her calendar . . . ." The Calendar has a

separate square for each day in which there are handwritten entries noting periods of time.[3] The total weekly time periods, in hours, are entered on the Calendar at the end of each week. Thus, for example, the week of April 6, 2009, notes daily hourly entries for each weekday that add up to a weekly total of 20 hours worked. The total number of hours worked by Plaintiff during the time period that she was employed by AFR, as evidenced by the Calendar, is 616 hours. Although Plaintiff states that she never worked more than 40 hours in any work week, and that she makes no claim for overtime compensation, she claims to have worked additional hours not reflected in the Calendar. Those hours are stated to be evidenced by Plaintiff's email records, as described below.

AFR disputes the validity of hours entered on the Calendar. Additionally, AFR disputes Plaintiff's position as to the number of hours worked for AFR, on the ground that she was working for a competitor at the same time. In support of the latter position, AFR has submitted, inter alia, Plaintiff's email correspondence referring to mortgage deals being worked on by Flick with a mortgage broker known as First Hallmark ("Hallmark"). Those emails are dated prior September 2, 2009 – the date when Plaintiff's employment with AFR was terminated. Also before the court are portions of Plaintiff's deposition testimony in which she admits that during the time of her employment with AFR, she "assisted borrowers in connection with loans originating with entities other than AFR" and that she "performed services for others," during

---

[3] Plaintiff agrees that she recorded hours worked on the Calendar, and that it reflects those hours. She makes two nonsensical objections to the court's consideration of the Calendar. First, Plaintiff objects to Defendant's characterization of the Calendar as a "ledger." Second, Plaintiff objects to referring to hours worked as "time frames." These "objections" to labels do not controvert the characterization of the Calendar as Plaintiff's record of hours worked.

11

that time period.

AFR states that even accepting, for the purpose of this motion only, the accuracy of Plaintiff's hours as reflected on the Calendar, Plaintiff is owed, at most, $1,116. This calculation is based upon multiplying the total hours worked by Plaintiff as reflected in the Calendar, by the minimum wage of $7.25 for a total wage of $4,466.00. Subtracting from this amount the $3,350.00 paid to Plaintiff leaves wages due of $1,116.00. AFR's alternative calculation, based upon the argument that Plaintiff was working for entities other than AFR after July 21, 2009, argues that Plaintiff was, in fact, overpaid. Cutting off the calculation of hours worked on July 21, 2009, results in a total number of hours worked for AFR at 456, which calculates to a minimum wage due of $3,306 – an amount less that the $3,350.00 actually paid. This latter calculation is supported by Plaintiff's telephone records and evidence obtained through discovery served upon non-party Hallmark. Thus, documents obtained from Hallmark support AFR's claim that after July 21, 2009, Plaintiff worked on loans on behalf of an entity other than AFR. Such evidence is also probative as to AFR's claim that Plaintiff breached a duty of loyalty owed to her employer.

In support of her claim that she worked hours in addition to those reflected on the Calendar, Plaintiff relies on what she describes as 4,000 pages of emails.[4] While Plaintiff states that she intends to "produce a disc for the purposes of filing" these emails, they are not before the

---

[4] Plaintiff takes issue with AFR's alleged failure to properly produce emails. Discovery has long been closed, and the time for seeking any additional discovery has come to an end. A review of the approximately 200 docket entries in this matter reveals that there has been ample time and opportunity to conduct discovery and litigate disputes. The court will not entertain any request for additional discovery.

court. Instead of the actual emails, Plaintiff's Statement contains a chart showing the first and last time of day that emails were received on particular days.

Even accepting Plaintiff's summary as a true reflection of the time stamp that is indicated on the emails (and that Plaintiff's computer properly reflected the time of day), that summary is, at best, minimally probative of nothing more than the first and last time of day that emails were received on any particular day. Such information says little, if anything, about hours actually worked. Thus, for example, the summary of emails states that on July 29, 2009 (a date when the Calendar reflects that Plaintiff was "away - Montauk"), Plaintiff received her first email at 4:36 A.M. and her last email at 5:14 P.M. Such a record is not probative of hours worked by Plaintiff, especially in view of the particular hours and information reflected in the Calendar. Indeed, in view of such other evidence, it would be ludicrous to conclude that the time stamp of emails can be relied upon in support of the notion that Plaintiff spent in excess of 12 hours online working for AFR on July 29, 2009. In view of the lack of probative value of such emails, and the specific time records that appear to have been actually kept by Plaintiff, the court holds that these emails cannot be relied upon to establish hours worked.

The evidence submitted by Plaintiff as to any claim of retaliation is sparse. Presumably in support of such claims, Plaintiff submits email correspondence with supervisors in which she questions whether she was paid the proper commission on certain loans.

V.  Disposition of the Motion

As noted, Plaintiff's opposition to Defendant's motion consists of a two page memorandum of law and Plaintiff's Statement. The memorandum of law contains only two arguments, both of which are rejected. First, the argument that AFR did not timely respond to

13

the complaint and that Plaintiff is therefore entitled to a judgment of default has previously rejected by this court. Plaintiff's other argument, i.e., that AFR's motion was never properly filed, is similarly rejected.

A.   Retaliation Claims

Upon review of the facts before the court in light of the law as stated, the court holds that summary judgment must be granted to AFR as to Plaintiff's FLSA claim of retaliation. Any such claim is supported only by emails submitted by Plaintiff in which she raised questions as to her commission compensation. Such complaints fail to support any FLSA claim of retaliation because: (1) they are internal company complaints, and (2) they are not "sufficiently clear and detailed" so as to raise the assertion of rights protected by the FLSA. See Kasten, 131 S. Ct. at 1335. Accordingly, any FLSA claim for retaliation is dismissed.

Plaintiff's failure to come forward with evidence also requires dismissal of any New York State law claim of retaliation. The court is aware that New York law prohibits retaliation with regard to complaints made to an employer, thus providing broader coverage than the FLSA See N.Y. Labor L. §215 (1)(a). Nonetheless, consistent with the fact that the Labor Law protects employees who complain of Labor Law violations, as well as fundamental fairness, the court holds that no violation of New York law has been stated. Plaintiff shows only that she engaged in limited email correspondence concerning her commission payments. She has come forward with no facts supporting the claim that she ever, either directly or indirectly, made a complaint raising a possible Labor Law violation. Thus, she cannot state a claim for retaliation following her correspondence. To hold otherwise would mean that any time an employee makes inquiry as to the propriety of a contractual payment, such complaint can form the basis of a Labor Law

14

retaliation claim. The coverage of the statute cannot be so broad.

The court reaches the same conclusion with respect to any whistleblowing claim sought to be asserted under the laws of the State of New Jersey. Even after two years of discovery, Plaintiff has come forward with no evidence that she made a complaint of any activity that falls within CEPA. Plaintiff's limited complaints about the calculation of her commission payments fall far short of the sort of activity that the statute is entitled to protect.

B.     Wage Claims

Turning to Plaintiff's sole surviving claims – the alleged failure to pay Plaintiff a minimum wage and/or her proper commission, the court holds that summary judgment must be denied. This denial is based upon the court's inability to determine, as a matter of law and with precision, commissions earned and hours worked and whether, in light of the commissions paid, Plaintiff is entitled to any further compensation.

Despite the denial of the motion, the court makes the following rulings and observations. First, Defendant has admitted that it is not in possession of records indicating the precise hours worked by Plaintiff. This may be due to the Agreement's provision requiring Plaintiff, who worked part-time and from home, to maintain her own records of hours worked. The fact that Defendant is not in possession of such records does not mean, however, that Plaintiff is entitled to recover any amount claimed. It remains Plaintiff's burden to prove hours worked. Any award in this case will be made pursuant to the burden-shifting approach described above, and based upon the evidence that will be admitted at trial. While such evidence will include the Calendar, it will not include, for the reasons set forth above, the 4,000 pages of emails sought to be relied upon by Plaintiff. The trier of fact will determine the issues of hours worked, as well as whether

15

hours were worked on behalf of AFR, or, as argued by Defendant, for a different entity.[5]

Plaintiff is reminded that this case is no more than a single claim, brought by a person employed for a period of less than six months, for unpaid wages and/or commissions. It is not an ERISA claim and it may no longer be pursued as a class or collective action. It appears entirely likely to the court that the amount at stake in this case may, in fact, fall below the $5,000 offered.

## CONCLUSION

The motion for summary judgment is granted in part and denied in part. Summary judgment is granted dismissing any FLSA or state law claim for retaliation and/or whistleblowing. The single remaining claim for payment of wages will proceed. Counsel are directed to appear before this court on for a final pretrial and settlement conference to be held on Thursday November 8, 2012 at 10:00 A.M. Clients shall be in attendance. The Clerk of the Court is directed to terminate the motion appearing at docket entry number 190.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
October 31, 2012

---

[5] AFR makes a passing reference in a footnote, without legal argument, to the possibility that Plaintiff is exempt from the FLSA an "outside sales employee." Since Plaintiff was not involved in the sale of tangible property, it is not likely that she falls within this category. See In re Novartis Wage and Hour Litigation, 611 F.3d 141, 150 (2d Cir. 2010).

16